UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC PARKER,

                Plaintiff,                    Case No. 2:20-cv-11162
                                              District Judge Arthur J. Tarnow
v.                                            Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 14) and AFFIRM THE COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II.   REPORT**

        Plaintiff Marc Parker brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security (Commissioner)

denying his application for Disability Insurance (DI) benefits.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 15), and the administrative record (ECF No. 10).

### A.   Background and Administrative History

In his March 6, 2018 application for disability insurance benefits (DIB), Plaintiff alleges his disability began on February 22, 2018, at the age of 52.  (ECF No. 10, PageID.179-180.)  In his disability report, he lists back, degenerative disc disease, neck, shoulders, wrists and hands, forearms, and left leg numbness as limiting his ability to work.  (ECF No. 10, PageID.200.)  His application was denied on May 10, 2018.  (ECF No. 10, PageID.106.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF No. 10, PageID.119-120.)  On March 20, 2019, ALJ Kevin Fallis held a hearing, at which Plaintiff and a vocational expert (VE), Amelia Shelton, testified.  (ECF No. 10, PageID.71-94.)  On May 23, 2019, ALJ Fallis issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 10, PageID.54-70.)

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 10, PageID.175-178.)  However, on March 14, 2020, the Appeals Council denied Plaintiff's request for review.  (ECF No. 10, PageID.43-48.)  Thus, ALJ Fallis's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on May 8, 2020.  (ECF No. 1.)

**B.     Plaintiff's Medical History**

The administrative record contains a medical record of approximately 186 pages, which were available to the ALJ at the time of his May 23, 2019 decision. (ECF No. 10, PageID.288-474 [Exhibits 1F-11F.)  These materials will be discussed in detail, as necessary, below.

**C.     The Administrative Decision**

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 22, 2018, his alleged onset date.  (ECF No. 10, PageID.59.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine with headaches and osteoarthritis.  (ECF No. 10, PageID.59-60.)  At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 10, PageID.60-61.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.

3

to perform light work . . . except the claimant can lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently.  The claimant can stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks.  The claimant can occasionally perform bilateral pushing, pulling, and operation of foot controls.  The claimant can never climb ladders, ropes, or scaffolds.  The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.  The claimant can occasionally perform bilateral overhead reaching.  The claimant can frequently perform bilateral handling and fingering.  The claimant must avoid even moderate exposure to vibration and use of hazardous moving machinery.  The claimant must avoid all exposure to unprotected heights.

(ECF No. 10, PageID.61-64.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (ECF No. 10, PageID.64.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as marker, routing clerk, and furniture rental clerk.  (ECF No. 10, PageID.65-66.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since February 22, 2018.  (ECF No. 10, PageID.66.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision

---

20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.    Analysis**

Plaintiff argues generally that the ALJ's decision is marred by legal error and that the RFC is unsupported by substantial evidence. (ECF Nos. 12 and 15.)[2] In so doing, he asserts that the ALJ failed to account for how his impairments limit his ability to stand/walk or lift/handle/finger because the ALJ: (1) did not find

---

[2] To the extent Plaintiff frames his summary judgment motion as a challenge to the ALJ's Step 5 determination (*see, e.g.*, ECF No. 12, PageID.487), he is actually challenging the RFC determination. *See Kirchner v. Colvin*, No. 12-cv-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed."). Notwithstanding the reference to Step 5, it is clear that Plaintiff's actual point of attack is the RFC, there being no showing of an incongruity between the hypothetical to the VE and the RFC. (ECF No. 12, PageID.496-497) ("Therefore, with the burden on the Commissioner at Step 5, the ALJ's *RFC determination is unsupported by the substantial weight of the evidence* by failing to account for the true picture of work-related limitations, and is promulgated with significant inconsistencies that, at a minimum, require reconciliation.") (Emphasis added).

6

radiculopathy to be a medically determinable impairment (MDI) at Step 2; (2)

inadequately evaluated the medical opinions of Drs. Richard Rankl and Reuben

Henderson; and (3) improperly analyzed Plaintiff's subjective symptoms and the

medical record.  (ECF No. 12, PageID.487-497; ECF No. 15, PageID.530-536.)[3]

The Commissioner opposes Plaintiff's motion, arguing that substantial evidence

supports the ALJ's RFC determination.  (ECF No. 14, PageID.507-528.)  For the

reasons that follow, I agree with the Commissioner.

## 1.    RFC determination

The Plaintiff bears the burden of proof at Steps 1-4, including proving her

RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)

("[D]uring the first four steps, the claimant has the burden of proof; this burden

shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health

and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r

of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains

the burden of proving her lack of residual functional capacity.").  The

Commissioner has the burden of proof only on "the fifth step, proving that there is

---

[3] The Court's ability to identify these issues would have been made far easier if
Plaintiff had avoided the use of such a generic statement of issues, *i.e.*, "Whether
the decision of the [ALJ] . . . is supported by substantial evidence and contains
errors of law" (ECF No. 12, PageID.478), and been more specific, following the
Undersigned's Practice Guideline to point out specific issues with topic headings
within the brief.

work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. § 404.1527(d)(2).  Pursuant to Social Security Rule (SSR) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.  "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'"  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

### 2.   The Court should find that Plaintiff failed to meet his burden of demonstrating harmful error at Step 2

Plaintiff first attacks the ALJ's RFC determination on the basis of the ALJ's finding at Step 2 that radiculopathy was not an MDI.  (ECF No. 12, PageID.490-492; ECF No. 15, PageID.530-531.)

An MDI is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1521.  "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source," rather than a claimant's "statement of symptoms, a diagnosis, or a medical opinion[.]"  *Id.  See also Tolbert v. Comm'r of Soc. Sec.*, No. 11-12059, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) ("[A] diagnosis establishes a medically determinable impairment only where it is supported by objective medical evidence.").

For context, at Step 2, the ALJ stated:

The medical evidence of record includes notes indicating possible radiculopathy (Exhibit 2F).  However, EMG studies performed in August 2017 were normal (Exhibit 4F, pp. 6-9).  Subsequent EMG studies of the lower extremities performed in March 2018 were normal with no findings of radiculopathy (Exhibits 5F, pp. 12-13; and 6F).  The undersigned finds that radiculopathy is not a medically determinable impairment.

ECF No. 10, PageID.60.)  Plaintiff does not challenge the ALJ's interpretation of the EMG studies, but instead asserts that radiculopathy is best diagnosed through other methods, citing an August 14, 2017 MRI showing worsening impingement of the exiting L3 nerve root and disc herniation, treatment notes indicating his discomfort with radicular symptoms, his testimony regarding pain, Dr. Rankl's findings of lumbosacral and paraspinal tenderness with radiating pain, and Dr. Carlo Adams's clinical assessment indicating radiculopathy as a possible source of his pain.  (ECF No. 12, PageID.491-492 (citing ECF No. 10, PageID.78, 83, 321, 324, 357, 408, 410, 413, 418, 470); ECF No. 15, PageID.530-531 (citing ECF No. 10, PageID.322, 324, 328-329, 357, 413-414, 418-419, 425, 436-437, 441, 447-448, 457-458, 470).)  However, even assuming, *arguendo*, that the evidence Plaintiff cites can be considered "acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1521, and that the ALJ failed to consider these medical signs of radiculopathy in the record by focusing only on the EMG results, Plaintiff has failed to carry his burden of establishing entitlement to a more restrictive RFC on this basis.  *See Jordan*, 548 F.3d at 423 (a "claimant . . . retains the burden of proving [his] lack of residual functional capacity").  According to Johns Hopkins, symptoms of radiculopathy include pain in the back, arms, and legs, weakness in the arms or legs, and numbness.  *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy.

As Defendant asserts (ECF No. 14, PageID.510), the ALJ accounted for these symptoms/impairments in the RFC, limiting Plaintiff to only frequent handling and fingering and to only occasional bilateral pushing, pulling, and operation of foot controls, bilateral overhead reaching, climbing of ramps or stairs, and balancing, stopping, kneeling, crouching, or crawling.  (ECF No. 10, PageID.61.)

And Plaintiff's identification of additional limitations is speculative at best. He lists symptoms he seemingly attributes to radiculopathy and simply states that "the records and testimony support neck pain radiating to both shoulders as well as numbness, tingling, and pain in both upper extremities with loss or grip strength that would limit the Plaintiff's ability to lift even 10 pounds in a competitive work-setting as well as cause difficulty with activities requiring use of her [sic] upper extremities, such as handling and fingering."  (ECF No. 12, PageID.491-492.)

The Court cannot accept an invitation to "play doctor" regarding the adequacy of EMG studies for ruling out radiculopathy.  Nor can it conclude from this litany of symptoms that Plaintiff must necessarily be incapable of handling, fingering, or lifting 10 pounds in a competitive work setting.  Plaintiff has not met his burden of proof at Step 2 to establish radiculopathy as an MDI, much less to establish the need for greater restrictions in the RFC based upon radiculopathy. *Walters*, 127 F.3d at 529.  Accordingly, the Court should find no harmful error, if any occurred, at Step 2.

11

###     3.     The Court should find that the ALJ adequately evaluated the opinions of Drs. Rankl and Henderson

Plaintiff also challenges the RFC determination based on the ALJ's

assessment of medical opinions proffered by his primary care physician, Dr. Rankl,

and State agency consultant Dr. Henderson.  (ECF No. 12, PageID.493-496; ECF

No. 15, PageID.531-536.)

###     a.     Dr. Rankl's opinion

On March 17, 2018, Dr. Rankl completed a questionnaire considering

Plaintiff's residual functional capacity since February 18, 2018.  (ECF No. 10,

PageID.345-346.)  He indicated that Plaintiff could sit, stand, or walk for 0 hours

in an 8-hour workday, and could never: lift even 5 pounds, bend, stoop, squat,

kneel, keep his head in a fixed position, handle, perform fine manipulation, reach,

or operate foot controls.  (ECF No. 10, PageID.345-346.)  In so doing, he stated

that at the last visit on February 23, 2018, Plaintiff experienced 10/10 pain and

could not get comfortable in any position.  (ECF No. 10, PageID.346.)

###     b.     The ALJ found Dr. Rankl's opinion "not persuasive"

The ALJ found Dr. Rankl's RFC questionnaire "not persuasive," stating:

> Richard Rankl, M.D., the claimant's primary care physician,
> completed a questionnaire dated March 17, 2018, regarding the
> claimant's limitations since February 2018.  The claimant was unable
> to sit, stand, or walk for any amount of time during an 8-hour
> workday.  He could never lift and carry even up to 5 pounds.  He
> could never bend, stoop, squat, kneel, or keep his head in a fixed
> position.  He could never perform bilateral handling, fine

manipulation, reaching, or operation of foot controls. The claimant's pain was "severe" and "would preclude the activity precipitating the pain." Dr. Rankl added that the claimant experienced severe pain of 10 on a severity scale of 0 to 10 at his last visit on February 23, 2018, and that he was unable to get comfortable in any position. The claimant was referred to a neurosurgeon (Exhibit 4F, pp. 3-4).

The opinion of Dr. Rankl regarding the claimant's physical limitations is not persuasive. The extreme limitations identified by the primary care physician are not supported by the medical evidence of record, examinations, objective testing, or other opinions. Specifically, Dr. Adams, the claimant's pain management specialist, repeatedly noted that the claimant had no work or activity restrictions, which is wholly inconsistent with Dr. Rankl's opinion of significant limitations.

(ECF No. 10, PageID.63.)

With regard to Dr. Adams, the ALJ stated:

The claimant began treating with Carlo Adams, M.D., a pain management specialist, on July 12, 2018. Dr. Adams assessed the claimant with lumbar facet syndrome based on limited lumbar range of motion. Physical therapy and continued use of pain medications was recommended. Dr. Adams noted that the claimant had no work or activity restrictions (Exhibit 10F, pp. 12-16). The claimant underwent a physical therapy evaluation on July 18, 2018. He rated his pain at 10 on a severity scale of 0 to 10. He presented using a cane for community ambulation. After 10 physical therapy visits, the claimant was discharged from physical therapy on August 20, 2018. He continued to use a cane and the claimant reported that he felt the same as he had prior to physical therapy, although his pain level at rest had decreased to 7 on a severity scale of 0 to 10 (Exhibit 7F). The claimant reported to Dr. Adams in late August 2018 that physical therapy did not improve his pain. The claimant deferred any injection treatments (Exhibit 10F, pp. 6-10). In December 2018, Dr. Adams referred the claimant to the University of Michigan pain clinic for a second opinion regarding his ongoing lumbar pain. Again, Dr. Adams noted that the claimant had no work or activity restrictions (Exhibit 11F).

> The multiple notations by Dr. Adams that the claimant had no work or activity restrictions are not persuasive because the medical evidence of record consistently showed reduced range of motion in the lumbar spine and the claimant's continuing complaints of radicular pain. While these factors might not preclude the claimant from performing work or participating in activities, the claimant would require some degree of limitation in his ability to sit, stand, walk, lift, carry, push, pull, perform postural activities, and in exposure to environmental factors.

(ECF No. 10, PageID.63.)  Thus, the ALJ appears to have carefully reviewed the records of both doctors (primary care and pain specialist) and to have independently struck a balance between one who called for extreme limitations and one who found no work or activity restrictions.  In fact, the ALJ was careful to craft an RFC which took into account difficulties with range of motion and complaints of radicular pain.

### c.   Dr. Henderson's opinion

State agency consultant Dr. Henderson completed a physical RFC assessment on May 10, 2018, finding Plaintiff capable of light work.  (ECF No. 10, PageID.99.)  In so doing, he opined that Plaintiff had limited ability to handle and finger but could occasionally lift or carry 20 pounds, occasionally climb stairs, ladders, ropes, and scaffolds, frequently balance, kneel, crouch, and crawl, and stand/sit/walk for about 6 hours in an 8-hour workday.  (ECF No. 10, PageID.101-102.)

### d.   The ALJ found Dr. Henderson's opinion "persuasive"

14

The ALJ found Dr. Henderson's opinion "persuasive," stating:

> Reuben Henderson, D.O., a State agency consultant, prepared a physical residual functional capacity assessment of the claimant dated May 10, 2018.  The consultant found that the claimant could perform work activity at the light exertional level.  The claimant could occasionally climb ramps, stairs, ladders, ropes, or scaffolds.  He could occasionally stoop.  He could frequently balance, kneel, crouch, or crawl.  The claimant was able to occasionally reach in any direction, including overhead.  He could perform handling and fingering frequently.  The claimant needed to avoid concentrated exposure to vibration and even moderate exposure to hazards (Exhibit 1A).

> The undersigned finds the State agency consultant's opinion persuasive, as it is supported by the medical evidence of record, examinations, objective testing, and other opinions.

(ECF No. 10, PageID.64.)

### e.     The Court should find no error in the ALJ's evaluation of the medical opinions at issue

As Plaintiff filed his DIB application after March 27, 2017, the ALJ

reviewed the subject medical opinions according to the standards provided in 20

C.F.R. § 404.1520c, which states that, "We will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from your medical sources."  20

C.F.R. § 404.1520c(a).  Instead, an ALJ must evaluate the persuasiveness of the

medical opinions submitted, and articulate the findings using the following factors:

supportability, consistency, relationship with the claimant, and specialization, with

supportability and consistency being the most important.  20 C.F.R. § 404.1520c.

15

Plaintiff takes issue with the ALJ's decision to discount Dr. Rankl's opinion based on a comparison with Dr. Adams's statements, which the ALJ also found not persuasive, stating, "The facts here bear repeating, by pivoting the analysis away from a review of the record evidence when evaluating Dr. Rankl's opinion for consistency and supportability as required, the ALJ instead relies on an inconsistency with Dr. Rankl's detailed and thorough opinion as compared to Dr. Adams' opinion based on a single sentence which the ALJ himself finds to be 'not persuasive' is not only inherently contradictory, it amounts to an unfair review that cannot be said to be supported by substantial evidence." (ECF No. 12, PageID.494; *see also* ECF No. 15, PageID.532-533.)  And with regard to Dr. Henderson's opinion, Plaintiff challenges the ALJ's statement, with no further elaboration, that it comported with the other evidence in the record, stating, "[A]s made clear herein, this opinion is entirely inconsistent with 'other opinions' and, in fact, every single opinion found in the record; yet again, the subjective complaints, examinations and objective testing, to include more recent than those reviewed by Dr. Henderson when he last looked at this file, support greater limitations that are well-founded by substantial evidence as discussed herein." (ECF No. 12, PageID.495; *see also* ECF No. 15, PageID.531-535.)

It is true that the ALJ discounted Dr. Rankl's opinion, in part, because its findings of total disability conflicted with Dr. Adams's equally unpersuasive notes

that Plaintiff had no work or activity restrictions (ECF No. 10, PageID.63), but any argument that this in and of itself constitutes error is unconvincing. This is especially apparent when considered in combination with the ALJ's analysis of Dr. Henderson's opinion. Utilizing such a comprehensive reading of the ALJ's RFC assessment, the Court can and should infer the ALJ's skepticism of two diametrically opposed conclusions (those of Drs. Rankl and Adams) in favor of Dr. Henderson's, which acknowledged Plaintiff's physical impairments but reasoned that he could continue to work with certain limitations. Such an analysis addresses both supportability and consistency in accordance with 20 C.F.R. § 404.1520c(b)(2). And although, admittedly, the ALJ could have been more thorough with his explanation as to why Dr. Rankl's opinion was inconsistent with the non-opinion evidence of record while Dr. Henderson's was consistent, the medical record is a manageable size in this case, and the ALJ provided a summary of Plaintiff's testimony and the medical evidence preceding his analysis of the opinion evidence. *See Athey v. Comm'r of Soc. Sec.*, No. 13-cv-12528, 2014 WL 4537317, at \*4 (E.D. Mich. Sept. 11, 2014) (reasoning that it is appropriate to read an ALJ's decision as a whole); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Plaintiff cites to the same evidence, and simply argues that a different conclusion should have been drawn, but it is not within the province of the Court to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide

17

questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).  Accordingly, the Court should find no harmful error in the ALJ's analysis of the medical opinions at issue.

Plaintiff's broad-brush assertion that the more recent evidence in the record not reviewed by Dr. Henderson supports greater limitations (ECF No. 12, PageID.495) should not alter the Court's conclusion.  Dr. Rankl's opinion, which Plaintiff implies the Court should have adopted, was rendered prior to Dr. Henderson's opinion, and it is Plaintiff's burden to demonstrate the need for a more restrictive RFC.  This cursory mention without identification of any particular medical records or the specifics of how they would alter the RFC is insufficient.  *See Jordan*, 548 F.3d at 423.  Moreover, the Sixth Circuit has recognized that there will always be a gap between the time the agency experts review the record and render an opinion and the time the hearing decision is issued. *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009).  The ALJ may rely on such opinions as long as the record reflects that he or she has considered the entire record.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010).  The record here does so reflect.

Nor should the Court find persuasive Plaintiff's assertion, in his reply brief, that "the ALJ states [Dr. Rankl's opinion] is based on the Plaintiff's severe pain

18

level given only at his last office visit.  (ECF No. 14, PageID.512).”  (ECF No. 15, PageID.533.)  As evidenced by Plaintiff's citation to the record, Defendant made this statement, not the ALJ.  In fact, the ALJ stated only: “Dr. Rankl added that the claimant experienced severe pain of 10 on a severity scale of 0 to 10 at his last visit on February 23, 2018, and that he was unable to get comfortable in any position.” (ECF No. 10, PageID.63.)  This is an accurate portrayal of Dr. Rankl's opinion. (*See* ECF No. 10, PageID.346.)

Accordingly, the Court should decline to find the RFC unsupported by substantial evidence on the basis of any alleged error in the ALJ's assessment of the medical opinion evidence.

### 4.    The Court should find no error in the ALJ's assessment of Plaintiff's subjective symptoms

To determine whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms and the extent to which those symptoms “can reasonably be accepted as consistent with the objective medical evidence and other evidence.” 20 C.F.R. § 404.1529(a), (c); SSR 16-3p, 2017 WL 5180304, at *2.  This involves a two-step process.  First, the ALJ “must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain.”  SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 404.1529.  “Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the

19

individual's symptoms is established, [the ALJ] evaluate[s] the intensity and

persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities . . . ."  SSR 16-3p, 2017

WL 5180304, at *3.

Here, the ALJ followed that two-step process, outlining Plaintiff's subjective

statements as well as the medical evidence of record, but ultimately determined

that although Plaintiff's "medically determinable impairments could reasonably be

expected to cause the alleged symptoms," his "statements concerning the intensity,

persistence, and limiting effects of these symptoms are not entirely consistent with

the medical evidence and other evidence in the record for the reasons explained in

this decision."  (ECF No. 10, PageID.61-62.)  Specifically, the ALJ reasoned:

> The undersigned finds that the claimant's allegations regarding the
> limiting effects of his physical impairments are not fully supported by
> the medical evidence of record.  Diagnostic testing showed fairly mild
> results.  No surgery was recommended and the claimant repeatedly
> deferred injection treatments.  The claimant's pain management
> specialist did not give him any restrictions and encouraged a second
> opinion because the claimant's pain complaints were in excess of his
> clinical and diagnostic findings.

(ECF No. 10, PageID.64.)

Plaintiff cites to medical records which he says support his claims of

difficulty standing and walking for even a short period of time, needing the

assistance of a cane, and pain radiating to both of his lower extremities (ECF No.

12, PageID.490).  But the ALJ acknowledged this evidence in his RFC assessment.

(ECF No. 10, PageID.61-63.)  The same is true for Plaintiff's citation to an August

14, 2017 MRI showing spondylitic changes, disc herniation, and nerve root

impingement, treatment records noting back pain and unsteady gait, notations

made by Dr. Adams, and an October 22, 2017 MRI of the cervical spine.  (*See*

ECF No. 12, PageID.490-493; ECF No. 15, PageID.532-533; ECF No. 10,

PageID.61-63.)  And Plaintiff largely does not dispute the ALJ's recitation of such

evidence, essentially asserting that he should have reached a different conclusion

than he did on the basis of such evidence.  However, again, it is not within the

province of the Court to "reconsider facts, re-weigh the evidence, resolve conflicts

in evidence, decide questions of credibility, or substitute its judgment for that of

the ALJ."  *Reynolds*, 424 F. App'x at 414.  Further, "if substantial evidence

supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite

conclusion.'"  *Blakley* 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273).

    Plaintiff does dispute the ALJ's statement discounting the limiting effects of

his physical impairments on the basis that he "repeatedly deferred injection

treatments" (ECF No. 10, PageID.64) (ECF No. 12, PageID.494-495) but, as

Defendant asserts (ECF No. 14, PageID.522), Plaintiff did decline lumbar epidural

injections on numerous occasions (ECF No. 10, PageID.415, 420, 472).  Plaintiff

cites to a November 2017 note by Dr. Adams that Plaintiff had a left lumbar

transforaminal epidural injection with zero improvement in October 2017 (ECF No. 10, PageID.435), but Dr. Adams's notes indicate that he continued to suggest such treatment following that injection (ECF No. 10, PageID.415, 420, 472), notwithstanding Plaintiff's own opinion that "the injections are not helping but even causing worsening pain and numbness" (ECF No. 12, PageID.482 (citing ECF No. 10, PageID.366, 369). Further, Dr. Adams noted in August 2018 that it was the bilateral lumbar facet injection that made Plaintiff's pain worse, and that Plaintiff had "not recently tried epidural." The same record also notes that Plaintiff "may consider" but was then "deferring" a lumbar injection "at this time[.]" (*See* ECF No. 10, PageID.418, 420.) It was entirely reasonable for the ALJ to consider this, and to give greater deference to the medical opinion of the physician over that of the patient. *See* SSR 16-3p, 2017 WL 5180304, at \*9 (failure to follow prescribed treatment is a valid consideration).

Finally, Plaintiff challenges the ALJ's statement that Dr. Adams encouraged him to seek a second opinion because his complaints of pain were in excess of the clinical and diagnostic findings. (ECF No. 12, PageID.496 (citing ECF No. 10, PageID.64).) Plaintiff acknowledges the referral but argues that Dr. Adams never provided the reason the ALJ cites. (ECF No. 12, PageID.496 (citing ECF No. 10, PageID.415, 420, 472).) And looking at the record citations that Plaintiff provides, I see no direct indication that Dr. Adams referred Plaintiff for a second opinion

based on complaints of pain in excess of medical findings.  Defendant did not

specifically address the argument, but did point to a note from one of the visits

during which Dr. Adams recommended a second opinion, and found "tenderness

on bilateral [palpation] w[ith] some over-reaction" (ECF No. 14, PageID.523

(citing ECF No. 10, PageID.418, 420)), and did indicate that the record contained

no evidence that Plaintiff followed through with the recommendation (ECF No. 14,

PageID.523).  Although this referral for a second opinion may well have been

connected to that finding, even assuming this were a mischaracterization of the

evidence by the ALJ, I do not believe it constitutes remandable or reversible error,

as additional substantial evidence supports the ALJ's RFC assessment.

### F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at

529 ("[D]uring the first four steps, the claimant has the burden of proof; this

burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown

legal error that would upend the ALJ's decision, and the ALJ's decision is

supported by substantial evidence.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

24

Dated:  August 23, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE